1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DESHAWN CATHEY,                          No.  2:14-cv-01749 JAM AC (PS)

12                   Plaintiff,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   CITY OF VALLEJO, et al.,

15                   Defendants.

16

17        Plaintiff is proceeding in this action pro se and in forma pauperis.  This action was

18   referred to the undersigned by E.D. Cal. R. ("Local Rule") 302(c)(21).

19        Plaintiff Deshawn Cathey, an African-American man, alleges that in violation of his

20   Fourth Amendment rights, he was stopped, searched, abusively handcuffed and falsely arrested

21   by a white Vallejo police officer, defendant Jodi Brown, who did so as part of a City of Vallejo

22   ("Vallejo") policy.  Plaintiff sues Brown and Vallejo under 42 U.S.C. § 1983.  The case is

23   proceeding on the Verified First Amended Complaint ("Complaint").  See ECF No. 15.

24        Defendants have moved for summary judgment on all Fourth Amendment claims as to

25   both defendants.  ECF No. 90.  They argue that the undisputed facts show that there was

26   reasonable suspicion or probable cause to stop, search and arrest plaintiff, that Brown's use of

27   handcuffs did not constitute excessive force, that Brown is protected by qualified immunity, and

28   that Vallejo is not liable under Monell v. New York City Dept. of Social Servs., 436 U.S. 658,

                                            1

1  692 (1978).  Plaintiff cross-moves for partial summary judgment on the false arrest claim.  ECF

2  No. 91.  He argues that the undisputed facts show that Brown lacked probable cause to arrest him.

3  The cross-motions came on for hearing before the undersigned on June 22, 2016.

4     For the reasons set forth below, the undersigned recommends that defendants' motion

5  should be granted as to Vallejo, which should be dismissed from this case, and denied as to

6  Brown, and that plaintiff's motion for partial summary judgment should be denied.

7                                    I.  BACKGROUND

8     A.     Material Facts

9     On April 3, 2014 in the late afternoon, defendant Brown and her partner were on patrol in

10  a marked police car, "driving southbound in the 800 block of 5th Street in Vallejo."  Defendants'

11  Undisputed Facts ("DUF") (ECF No. 95-1) ("DUF") ¶ 2.[1]  Brown "observed several subjects

12  sitting and standing on the west public sidewalk in front of 813 5th Street."  DUF ¶ 11.  Brown

13  also observed two males drinking alcohol and one rolling a marijuana cigar ("a blunt").  DUF

14  ¶ 12.  At the same time, plaintiff was also in front of the residence, talking on his cell phone to his

15  wife, having visited a friend who lives there.  Plaintiff's Facts in Opposition to Defendants' MSJ

16  ("Plaintiff's Opposition Facts") (ECF No. 102) ¶¶ 1, 2.

17     Plaintiff was not part of the group of "subjects" Brown had observed, nor was he one of

18  the men who were drinking and rolling a marijuana cigar.  Id. ¶ 9.[2]  The undersigned considers

19  this fact to be undisputed.  There is nothing in defendants' carefully worded declarations that

20  states that plaintiff was in fact loitering or that he was loitering with the other individuals Brown

21  and her partner encountered on the street that day.  Meanwhile, plaintiff's declaration specifically

22  denies that he was loitering or that he was with this group of "subjects."  Id.  The only references

23  to plaintiff's alleged loitering or being with the group of subjects that Brown encountered appears

24  in defendants' legal brief and were made by counsel at oral argument.  See, e.g., ECF No. 90

25

26  _____
    [1]  The undersigned cites defendants' DUF – as reprinted in plaintiff's opposition papers – where
27  plaintiff indicates that the fact is "undisputed."  See ECF No. 95-1 (plaintiff's response to
    defendants' statement of undisputed facts).
    [2]  The undersigned uses plaintiff's declaration where defendants do not dispute the asserted facts.
28

2

1   at 13 & 14 (arguing that plaintiff was "loitering with other individuals in that area").  Indeed,

2   defendants argue that it is "irrelevant" whether or not plaintiff was actually with the group of

3   subjects, so long as he was "in the area."  See ECF No. 103 at 3.

4         The block is personally known to Brown and her partner – through their own activities,

5   including gun and narcotics arrests, and from observing other officers – to be "a high narcotics

6   and crime area" that is "violent with past shootings and murders."  DUF ¶¶ 3-6.  Brown left the

7   car and smelled a strong odor of marijuana coming from the area where the group of men was.

8   DUF ¶ 14.  Brown approached the group of "subjects," but before reaching them, she encountered

9   plaintiff.  DUF ¶ 15 ("[a]s I approached the subjects, I first made contact with Deshawn Cathey").

10        Brown asserts that when she made contact with plaintiff, "she smelled a strong odor of

11  marijuana coming from Plaintiff."  Declaration of Jodi Brown ("Brown Decl.") (ECF No. 93)

12  ¶ 11.  Plaintiff denies that Brown could have smelled marijuana coming from him.  Plaintiff's

13  Opposition Facts ¶ 10.  In explaining how he knows this, plaintiff asserts that he "did not and

14  do[es] not smoke marijuana."  Id.  In addition, as noted above, he asserts that he was not with the

15  "subjects" who were smoking marijuana.[3]  Plaintiff's Opposition Facts ¶ 9.

16        Brown ordered plaintiff to drop his cell phone to the ground.  Declaration of Plaintiff

17  Deshawn Cathey ("Plaintiff's Facts") (ECF No. 91 at 10-11) ¶ 2.  Plaintiff complied.  Id.  Brown

18  then conducted a search of plaintiff's pockets, without plaintiff's consent.  DUF ¶ 16; Plaintiff's

19  Facts ¶ 3.  While conducting her search, Brown asked plaintiff what he was doing there, and

20  plaintiff explained that he was there visiting a friend who lived at the 5th Street address.

21  Plaintiff's Facts ¶¶ 4, 5.  The search revealed $772 in the following denominations: $20, $10, $5,

22  $1, and $100.  DUF ¶ 17.  It is in Brown's experience that "these small denominations are

23  consistent with drug sales."  Id. ¶ 18.[4]

24  ////

25  _____

26  [3]  At oral argument, plaintiff asserted that he was not even on the sidewalk where the other men
    were, but that he was on the stoop of his friend's house, having just left it.  However, these facts
    are not included in plaintiff's declarations.

27  [4]  The money was eventually returned to plaintiff after the District Attorney declined to file
    charges "due to insufficient evidence."  Complaint at 3.

28

Brown then arrested plaintiff on a charge of loitering with intent to commit an offense involving controlled substances.  DUF ¶ 20; see Cal. Health & Safety Code §§ 11350, et seq. (offenses involving controlled substances), 11532 (loitering with intent to violate §§ 11350, et seq.).[5]  Brown also arrested one of the other men, Jamie Clark, on "a drug-related charge."  DUF ¶¶ 21, 23.  Another man, Frederick Marcellus Cooley, was issued a citation by Brown's partner, who charged Cooley with marijuana possession.  DUF ¶¶ 21, 22.

Brown placed plaintiff in handcuffs.  DUF ¶ 24.  Plaintiff asserts that the handcuffs were put on "too tight."  Plaintiff's Opposition Facts ¶ 6.  Plaintiff further asserts that he "complained to Defendant Brown numerous times that the handcuffs were too tight," but Brown ignored him.  Id. ¶ 7.  Brown, without denying that she put the handcuffs on so that they were too tight, asserts instead that she put the handcuffs on "in a manner consistent with her POST training and the policies of the Vallejo Police Department."  Brown Decl. ¶ 17.  Brown asserts that she does not remember plaintiff complaining about the handcuffs.  Brown Decl. ¶ 18.  Brown's partner asserts that he did not hear plaintiff complain about the handcuffs.  Declaration of Hans Williams ("Williams Decl.") (ECF No. 90-5) ¶ 9.  Brown asserts that if plaintiff had complained, she would have checked.  Id.  Plaintiff never requested medical attention.  Brown Decl. ¶ 18; Williams Decl. ¶ 9.

Plaintiff was held in a holding cell for several hours before being released.  Plaintiff's Facts ¶ 6.

B.      The Claims

The claims at issue in these cross-motions are plaintiff's Section 1983 claims against Brown for unlawful search, false arrest and use of excessive force, and a claim against Vallejo for municipal liability under the authority of Monell.

## II.  SUMMARY JUDGMENT STANDARDS

Summary judgment, governed by Fed. R. Civ. P. 56, is appropriate when the moving party

---

[5]  According to defendants, plaintiff was arrested for "loitering" with the intent to commit a drug offense, but we never learn which drug offense was involved.

1   "shows that there is no genuine dispute as to any material fact and the movant is entitled to

2   judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he

3   moving party initially bears the burden of proving the absence of a genuine issue of material

4   fact."  Nursing Home Pension Fund, Local 144 v. Ellison (In re Oracle Corp. Sec. Litig.), 627

5   F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

6   moving party may accomplish this by "citing to particular parts of materials in the record,

7   including depositions, documents, electronically stored information, affidavits or declarations,

8   stipulations (including those made for purposes of the motion only), admissions, interrogatory

9   answers, or other materials" or by showing that such materials "do not establish the absence or

10  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

11  support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

12       "Where the non-moving party bears the burden of proof at trial, the moving party need

13  only prove that there is an absence of evidence to support the non-moving party's case." Oracle

14  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

15  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

16  motion, against a party who fails to make a showing sufficient to establish the existence of an

17  element essential to that party's case, and on which that party will bear the burden of proof at

18  trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

19  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

20  a circumstance, summary judgment should "be granted so long as whatever is before the district

21  court demonstrates that the standard for the entry of summary judgment, as set forth in

22  Rule 56(c), is satisfied." Id.

23       If the moving party meets its initial responsibility, the burden then shifts to the opposing

24  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

25  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

26  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

27  of its pleadings but is required to cite to "particular parts of materials in the record," including

28  affidavits and admissible discovery material, in support of its contention that the dispute

5

1   exists.  See Fed. R. Civ. P. 56(c)(1).[6]  The opposing party must demonstrate that the fact in

2   contention is material, that is, it is a fact "that might affect the outcome of the suit under the

3   governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

4   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

5   genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the

6   nonmoving party," Anderson, 447 U.S. at 248.

7        In the endeavor to establish the existence of a factual dispute, the opposing party need not

8   establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed

9   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

10  truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities

11  Serv. Co., 391 U.S. 253, 288-89 (1968)).  Thus, the "purpose of summary judgment is to pierce

12  the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

13  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

14       "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

15  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

16  v. Central Contra Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation

17  omitted).[7]  It is the opposing party's obligation to produce a factual predicate from which the

18  inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir.

19  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

20  show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at

21  586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact

22  ////

23

24  ---

    [6]  However, where a plaintiff's pro se complaint has been verified, and where it is based on
    personal knowledge and sets forth specific facts admissible in evidence, then like any sworn
25  declaration, "it may be considered in opposition to summary judgment."  McElyea v. Babbitt, 833
    F.2d 196, 197 (9th Cir. 1987).
26  [7]  Where, as here, the parties have filed cross-motions for summary judgment, the court reviews
    each separately, "giving the nonmoving party for each motion the benefit of all reasonable
27  inferences."  Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780,
    786 (9th Cir. 2008), cert. denied, 555 U.S. 1098 (2009).
28

1  to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First

2  Nat'l Bank, 391 U.S. at 289).

3                        III.  APPLICABLE LAW

4        A.  The Fourth Amendment

5        "The Fourth Amendment protects the 'right of the people to be secure in their persons,

6  houses, papers, and effects, against unreasonable searches and seizures.'"  California v. Acevedo,

7  500 U.S. 565, 569 (1991).  "This inestimable right of personal security belongs as much to the

8  citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his

9  secret affairs."  Terry v. Ohio, 392 U.S. 1, 8-9 (1968).

10          1.  Searches

11       In order for a police officer to search a person, she must have "probable cause" to do so,

12  unless an exception applies.  Chambers v. Maroney, 399 U.S. 42, 51 (1970) ("[i]n enforcing the

13  Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has

14  insisted upon probable cause as a minimum requirement for a reasonable search permitted by the

15  Constitution"); United States v. Portillo-Reyes, 529 F.2d 844, 848 (9th Cir. 1975) ("the Court

16  always has regarded probable cause as the minimum requirement for a lawful search") (internal

17  quotation marks omitted), cert. denied, 429 U.S. 899 (1976).[8]

18       In addition to probable cause, a search warrant must "generally" be secured prior to the

19  search.  Kentucky v. King, 563 U.S. 452, 459, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011)

20  ("[a]lthough the text of the Fourth Amendment does not specify when a search warrant must be

21  obtained, this Court has inferred that a warrant must generally be secured"); Chambers, 399 U.S.

22  at 51 ("[a]s a general rule," the Court "has also required the judgment of a magistrate on the

23  probable-cause issue and the issuance of a warrant before a search is made").  However, "the

24  warrant requirement is subject to certain reasonable exceptions."  King, 563 U.S. at 459; United

25

26  [8]  See Griffin v. Wisconsin, 483 U.S. 868, 873 (1987) (the Court has "permitted exceptions" to
     the warrant and probable cause requirements "when special needs, beyond the normal need for
27  law enforcement, make the warrant and probable-cause requirement impracticable'") (quoting
     New Jersey v. T.L.O., 469 U.S. 325, 351 (1985)).

28

1    States v. Ogden, 485 F.2d 536, 539 (9th Cir. 1973) ("[a] search without the prior approval of a

2    judge or magistrate is *per se* unreasonable under the Fourth Amendment subject only to a few

3    well-delineated exceptions"), cert. denied, 416 U.S. 987 (1974).  "Probable cause for a search

4    requires a fair probability that contraband or evidence of a crime will be found in a particular

5    place, based on the totality of the circumstances."  United States v. Fries, 781 F.3d 1137, 1150

6    (9th Cir.) (regarding probable cause underlying a search warrant), cert. denied, 136 S. Ct. 583

7    (2015).

8                    2.  Seizures / Arrests

9           Probable cause for an arrest "exists when officers have knowledge or reasonably

10   trustworthy information sufficient to lead a person of reasonable caution to believe that an offense

11   has been or is being committed by the person being arrested."  United States v. Lopez, 482 F.3d

12   1067, 1072 (9th Cir. 2007), cert. denied, 552 U.S. 936 (2007).  Even in the absence of an arrest

13   warrant, however, if an officer "has probable cause to believe that an individual has committed

14   even a very minor criminal offense *in his presence*, he may, without violating the Fourth

15   Amendment, arrest the offender."  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)

16   (emphasis added); United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir.) ("[u]nder the Fourth

17   Amendment, a warrantless arrest requires probable cause"), cert. denied, 552 U.S. 936 (2007).

18                   3.  Excessive Force

19          "An objectively unreasonable use of force is constitutionally excessive and violates the

20   Fourth Amendment's prohibition against unreasonable seizures."  Torres v. City of Madera, 648

21   F.3d 1119, 1123-24 (9th Cir. 2011), cert. denied, 132 S. Ct. 1032 (2012).  "It is well-established

22   that overly tight handcuffing can constitute excessive force."  Wall v. County of Orange, 364 F.3d

23   1107, 1112 (9th Cir. 2004).

24          B.  Qualified Immunity

25                   The doctrine of qualified immunity shields officials from civil
                     liability so long as their conduct does not violate clearly established
26                   statutory or constitutional rights of which a reasonable person
                     would have known. A clearly established right is one that is
27                   sufficiently clear that every reasonable official would have
                     understood that what he is doing violates that right. We do not
28                   require a case directly on point, but existing precedent must have

> placed the statutory or constitutional question beyond debate.  Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (citations and internal quotation marks omitted) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

C. Fourth Amendment – Monell Liability

> A municipality or other local government may be liable under this section [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.   But, under § 1983, local governments are responsible only for their *own* illegal acts.  They are not vicariously liable under § 1983 for their employees' actions.
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.  Official municipal policy includes . . . practices so persistent and widespread as to practically have the force of law.  These are action[s] for which the municipality is actually responsible.

Connick v. Thompson, 563 U.S. 51, 60-61 (2011) (citations and some internal quotation marks omitted) (emphasis in text) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978)).

Therefore, in order to prevail on his Monell claim, plaintiff must demonstrate first, that Brown's conduct was unconstitutional, and second, that Vallejo was responsible for that constitutional wrong.  Lowry v. City of San Diego, 818 F.3d 840, 847 (9th Cir. 2016).

IV.  ANALYSIS

A. Defendants' Motion: The Search

Plaintiff claims that Brown's warrantless search of his pockets violated his Fourth Amendment right to be free from unreasonable searches.  Because the search of plaintiff's pockets was done without a warrant, defendants must, at a minimum, produce evidence showing that (1) Brown had "probable cause" to believe a search would yield contraband or evidence of a crime (or that an exception to this requirement existed), *and* (2) that some exception to the warrant requirement existed.

1. Terry Stop

According to defendants' version of the facts, plaintiff was present in a high crime and

1   drug area, and a group of men – some of whom were drinking alcohol in public, one of whom

2   was rolling a marijuana cigar in public, and who had no apparent lawful purpose for being there –

3   were also present in that area.  Defendants argue that under <u>Terry</u>, it was lawful for Brown to

4   "stop and briefly detain plaintiff," presumably to investigate whether plaintiff was committing the

5   misdemeanor of loitering for the purpose of engaging in illegal drug activities, the charge for

6   plaintiff was ultimately arrested.  <u>See</u> Cal. Health & Safety Code §§ 11532(a) (anti-loitering

7   statute), 11536 (misdemeanor designation).  There is no need to resolve this matter, since plaintiff

8   does not claim that the initial stop and detention violated his rights.  Rather, he complains about

9   the search of his pockets, the handcuffing and his arrest.

10                  2.  The search: reasonable suspicion

11          Upon approaching plaintiff, Brown asserts that she "smelled a strong odor of marijuana

12  coming from Mr. Cathey."  Brown Decl. ¶ 11.  "As a result I stopped Mr. Cathey and searched

13  him."  <u>Id.</u>  Defendants argue that the smell "alone, gave Officer Brown *reasonable suspicion* to

14  stop and search Plaintiff."  ECF No. 90 at 14 (emphasis added).  However, the only type of

15  "search" in this situation that can lawfully be based upon "reasonable suspicion" (rather than

16  "probable cause") is a "frisk" for weapons under <u>Terry</u>.[9]  Indeed, defendants seem to be arguing

17  that this was a search under the authority of <u>Terry</u>.

18          However, <u>Terry</u> does not authorize the search that occurred here.

19                  In <u>Terry v. Ohio</u>, the Supreme Court created a limited exception to
20              the  general  requirement  that  officers  must  have  probable  cause
                before  conducting  a  search.  392 U.S. 1, 30 (1968).  The Court held
21              that officers may conduct an investigatory stop consistent with the
                Fourth  Amendment  "where  a  police  officer  observes  unusual
22              conduct  which  leads  him  reasonably  to  conclude  in  light  of  his
                experience that criminal activity may be afoot...."  <u>Id.</u>  In addition,
23              an officer may conduct a brief pat-down (or frisk) of an individual
                when the officer reasonably believes that "the persons with whom
24              he is dealing may be armed and presently dangerous."  <u>Id.</u>

25

26  _____
    [9]  A <u>Terry</u> stop is one of the short list of exceptions to the "probable cause" requirement.  <u>United</u>
27  <u>States v. I.E.V.</u>, 705 F.3d 430, 434 (9th Cir. 2012) ("[i]n <u>Terry v. Ohio</u>, the Supreme Court
    created a limited exception to the general requirement that officers must have probable cause
28  before conducting a search").

1     United States v. I.E.V., 705 F.3d 430, 434 (9th Cir. 2012).

2         "For a frisk to be valid, under this exception to the general rule requiring probable cause,

3 the frisk must be . . . 'confined in scope' to a 'carefully limited search of the outer clothing . . . in

4 an attempt to discover weapons which might be used to assault' an officer." I.E.V., 705 F.3d

5 at 433 (quoting Terry).

6         Therefore, even where a Terry stop is authorized, "[t]he purpose of this limited search is

7 not to discover evidence of crime, but to allow the officer to pursue his investigation without fear

8 of violence . . .." Adams v. Williams, 407 U.S. 143, 146 (1972); Terry, 392 U.S. at 29 (1968)

9 (the sole justification of such a search "is the protection of the police officer and others nearby,

10 and it must therefore be confined in scope to an intrusion reasonably designed to discover guns,

11 knives, clubs, or other hidden instruments for the assault of the police officer").  Accordingly,

12 Brown may well have been entitled to "pat-down" plaintiff to ensure he did not have weapons

13 that could have put the officer's safety in jeopardy.  See I.E.V., 705 F.3d 432-33 ("[w]here an

14 officer reasonably believes that the persons with whom he is dealing may be armed and presently

15 dangerous, the officer may conduct a frisk or "pat-down" search of that person") (some internal

16 quotation marks omitted).

17         However, if the officer extends the Terry stop to fish further for evidence of wrongdoing,

18 she violates the Fourth Amendment.  See Rodriguez v. United States, 135 S. Ct. 1609 (2015)

19 (prolonging the initial detention to allow police dog to sniff for drugs violates the Fourth

20 Amendment); I.E.V., 705 F.3d at 433 ("a frisk is not valid if it is a general exploratory search

21 motivated out of a desire "to prevent the disappearance or destruction of evidence of crime").

22         There is nothing in defendants' declarations that suggests that Brown conducted a search

23 pursuant to Terry.  Brown does not state or even suggest that she was patting plaintiff down for

24 weapons, that she was searching plaintiff for weapons, or that she had any concern that weapons

25 could be present or that her safety was at issue.  Moreover, although seemingly relying on Terry,

26 defendants do not even argue that the search was for the purpose of safety or to ensure that

27 weapons were not present.  While the evidence presented in this motion indicates that Brown may

28 have initially intended to conduct a Terry stop, she did not do so.  Instead, she engaged in a full-

1   blown search of plaintiff that was "aimed at detect[ing] evidence of ordinary criminal

2   wrongdoing." Rodriguez, 135 S. Ct. at 1615 (internal quotation marks omitted).  This was not a

3   search under the authority of Terry.  In order to conduct the search that actually occurred, Brown

4   needed "probable cause," Chambers, 399 U.S. at 51 ("probable cause" is the constitutional

5   minimum for a search), not "reasonable suspicion."

6                    3.  The search: probable cause

7       Defendants next argue that the smell of marijuana, alone, gave Brown "probable cause" to

8   search plaintiff, citing United States v. Barron, 472 F.2d 1215, 1217 (9th Cir. 1973) (per curiam),

9   cert. denied, 413 U.S. 920 (1973).  ECF No. 90 at 14.  However, the existence of probable cause

10  (such as the odor of marijuana emanating from someone who is not authorized to possess or use

11  it),[10] does not itself authorize the police officer to *dispense* with the warrant requirement and

12  conduct a search.  Instead, probable cause is the standard needed for that officer to *obtain* a search

13  warrant.  See U.S. Const. Amend. 4 (prohibiting "unreasonable searches," and providing that "no

14  Warrants shall issue, but upon probable cause"); Fries, 781 F.3d at 1150 ("[p]robable cause for a

15  search requires a fair probability that contraband or evidence of a crime will be found in a

16  particular place, based on the totality of the circumstances").

17      A *warrantless* search, such as occurred here, requires, in addition to probable cause, that

18  an exception to the warrant requirement exist.  See, e.g., Ogden, 485 F.2d 539 ("[a] search

19  without the prior approval of a judge or magistrate is *per se* unreasonable under the Fourth

20  Amendment subject only to a few well-delineated exceptions").  There is a long list of exceptions

21  to the warrant requirement.[11]  The only one defendants argue applies here is the "Terry stop"

22

---

23  [10]  It is not clear that in April 2014 in California, the odor of marijuana, alone, provides "probable
    cause" to justify a full-on search of a pedestrian (assuming some exception to the warrant
24  requirement existed).  It appears that at the time of this encounter, the possession and use of
    marijuana for medical purposes was lawful under California law.  See Cal. Health & Safety Code
25  § 11362.5 ("Medical use").  Even under defendants' version of the facts, Brown did not
    investigate; she did not, for example, ask plaintiff about the marijuana odor and did not give him
26  a chance to explain it, since she simply walked up to him and, after ordering him to drop his
    phone, immediately searched his pockets.
27  [11]  See Alafair S. Burke, Got A Warrant?: Breaking Bad and the Fourth Amendment, 13 Ohio St.
    J. Crim. L. 191, 193-94 (2015).

28

1    exception.  However, as discussed above, that exception does not justify the search conducted in

2    this case.  Defendants identify no other exception that existed here.

3         The case defendants rely upon, Barron, does not support the warrantless search that

4    occurred here.  In Barron, the odor of marijuana emanated from a vehicle.  Barron, 472 F.2d

5    at 1217 ("the fact that an agent familiar with the odor of marijuana, smelled such an odor

6    emanating from the automobile when he jumped in to stop it, alone was sufficient to constitute

7    probable cause for a subsequent search for marijuana").  Accordingly, the "vehicle exception" to

8    the warrant requirement applied.  Chambers, 399 U.S. at 51 ("a search warrant [is] unnecessary

9    where there is probable cause to search an automobile stopped on the highway; the car is

10   movable, the occupants are alerted, and the car's contents may never be found again if a warrant

11   must be obtained"); Ogden, 485 F.2d at 539 (odor of marijuana provided probable cause, and "the

12   exigencies of time and the possible removal of the contraband to another state create an

13   emergency" providing an exception to the warrant requirement).  This case does not involved a

14   vehicle, so Barron does not apply.

15        Since defendants do not argue that any other exception to the warrant requirement existed

16   during this encounter,[12] they are not entitled to summary judgment on the unlawful search claim.

17              4.  The search: factual basis

18        Whether Brown actually smelled marijuana coming from plaintiff, or whether she had a

19   reasonable suspicion or probable cause to believe that plaintiff was engaged in unlawful activity,

20   is, at best, genuinely in dispute.  Brown bases her reasonable suspicion or probable cause on her

21   argument that plaintiff was with a group of men who were standing around "for no apparent

22   lawful purpose" in a high drug and crime area.  She argues that "Plaintiff's loitering with other

23   ////

24

25   ─────────────────────────
     [12]  Even assuming that defendants are arguing that plaintiff committed a crime in Brown's
     presence, there is a genuine dispute about whether Brown reasonably believed plaintiff was
26   committing a crime, as discussed below.  See Carlson v. United States, 28 F.2d 1008, 1008 (9th
     Cir. 1928) ("inasmuch as the offense was committed in the immediate presence of the officer, no
27   warrant of arrest or search warrant was necessary, and the legality of the search and seizure does
     not enter into the case").

28

1   individuals in that area was a sufficient basis for Officer Brown to stop and briefly detain

2   Plaintiff."  ECF No. 90 at 13.

3        However, the assertion that plaintiff was loitering with this group of men appears only in

4   defendants' brief, and is nowhere to be found in the evidence submitted in support of the motion.

5   Moreover, defendant states under oath that he was not "with" the other men, that he was not

6   loitering there, and that there was no odor of marijuana emanating from him, putting the basis for

7   Brown's stop genuinely in dispute.  Plaintiff's Opposition Facts ¶¶ 9, 10.  Plaintiff further

8   explains why Brown could not have smelled marijuana coming from his person.  First, he asserts

9   that he does not smoke marijuana, and did not smoke marijuana then.  Id. ¶ 9.  Second, he asserts

10  that he was not standing with the other men, id., from which it can be inferred that no smell could

11  have attached to him from close proximity to other people who were smoking.  Read in the light

12  most favorable to plaintiff, Brown stopped and detained plaintiff not because he was in a group of

13  men engaged in suspicious behavior, but because he was in the same general area as a group of

14  suspicious men.

15       In her brief, Brown concedes that plaintiff was not drinking or rolling a marijuana cigar,

16  but that only the other men were.  See ECF No. 90 at 14 ("The individuals with whom Plaintiff

17  was loitering were observed to be drinking alcohol and one was rolling a marijuana cigar").  The

18  fact that other persons are engaged in dubious behavior does not give an officer cause to search

19  plaintiff, simply because he was in the same general area.  See I.E.V., 705 F.3d at 435

20  ("something more than a knowledge of drugs in close proximity is required to justify frisking a

21  suspect").

22       B.  Cross-Motions: Probable Cause To Arrest Plaintiff

23            1.  Defendants' Motion

24       Brown argues that she had probable cause to arrest plaintiff because he had over $700 in

25  "small" denominations (including $100 bills), the odor of marijuana was emanating from him,

26  another man other in the area had marijuana on him, and another man in the area was seen to be

27  rolling a marijuana cigar.  However, as noted above, the odor issue is genuinely in dispute,

28  ////

1   whether plaintiff was "with" the other members of the groups is genuinely in dispute, and there is

2   no evidence that plaintiff himself was in possession of marijuana.

3       That leaves only the $772 dollars, and the fact that plaintiff was in a high crime and drug

4   area.  However, Brown does not argue that the money and the neighborhood character alone

5   provided sufficient probable cause to arrest plaintiff.  Since defendants do not even argue that the

6   two undisputed facts here – the existence of the $772 dollars and the character of the

7   neighborhood – are sufficient to provide probable cause for a warrantless arrest, nor do they

8   identify cases so holding, they are not entitled to summary judgment on this claim.[13]

9       2. Plaintiff's Motion

10      Plaintiff argues that it is undisputed that he was engaged in lawful activity on 5th Street

11  that afternoon, namely, he was talking with his wife on his phone, and visiting a friend who lived

12  there.  But Brown's declaration, *if it were undisputed*, would clearly show that she had probable

13  cause to arrest plaintiff.  Viewed in the light most favorable to Brown, and drawing all reasonable

14  inferences in her favor, the evidence shows that plaintiff was in a high crime and drug area with a

15  group of men who were drinking alcohol on the public sidewalk and rolling a marijuana cigar.  A

16  strong odor of marijuana came from the group.  A strong odor of marijuana emanated from

17  plaintiff himself.  This would be evidence contributing to probable cause for Brown to arrest

18  plaintiff for violation of the loitering statute.  See Cal. Health & Safety Code § 11532(b)(7)

19  (among things police may consider in deciding whether someone is loitering for drug activities is

20  whether the person is under the influence of drugs).

21      In addition, after searching plaintiff, Brown found a relatively large sum of money, $772,

22  in "small" denominations.  In light of the other circumstances, Brown is entitled to view that

23  money as adding to the probable cause supporting an arrest.  See United States v. Mattarolo, 209

24  F.3d 1153, 1159 (9th Cir. 2000) ("Also found in defendant's possessions were packaging

25  _____

26  [13]   Brown also states that "[a] criminal identification index revealed that Mr. Cathey has been
    convicted of sales of narcotics in the past."  Brown Decl. ¶ 14.  However, there is no assertion
    that Brown checked this index search *before* arresting plaintiff, so it is not relevant to whether she

27  had probable cause to arrest him.  Nor do defendants argue that this, together with the other two
    undisputed facts, are sufficient to provide probable cause to arrest plaintiff.

28

15

1    materials, a razor blade, scales, and large sums of cash in small denominations along with

2    quantities of the drugs.  Those materials indicated possession of drugs for distribution, not

3    personal use as the defendant claimed.  The evidence of guilt was more than sufficient."), cert.

4    denied, 531 U.S. 888 (2000).

5          C.  Defendants' Motion: Excessive Force

6          Plaintiff claims that Brown violated his Fourth Amendment rights by putting the

7    handcuffs on him so that they were too tight, and ignoring his complaints about them being too

8    tight.  This states a claim for excessive force.  See, e.g., LaLonde v. Cty. of Riverside, 204 F.3d

9    947, 960 (9th Cir. 2000) ("a series of Ninth Circuit cases has held that tight handcuffing can

10    constitute excessive force").

11             1.  Defendants' Evidence

12          Defendants argue that they are entitled to summary judgment on the excessive force

13    claim.  In support, Brown testifies that she applied handcuffs "in a manner consistent with my

14    POST training and the policies [of the] Vallejo Police Department."  Brown Decl. ¶ 17.[14]  She

15    does not remember plaintiff complaining that the handcuffs were too tight.  Id. ¶ 18.  Brown's

16    partner also did not hear plaintiff complain that the handcuffs were too tight.  Williams Decl.

17    (ECF No. 90-5) ¶ 9.  If plaintiff had complained, Brown "would have checked them as I am

18    trained to do and as I do as a matter of practice."  Id.  Plaintiff never complained of any pain, and

19    never requested medical attention.  Id.

20          This testimony, even if undisputed, would not establish that Brown did not use excessive

21    force on plaintiff.  Defendants do not explain what POST standards say about application of

22    handcuffs, nor what Vallejo Police Department policy says about it.  There is no evidentiary basis

23    for an inference that where standard procedures are followed, too-tight handcuffs are impossible.

24    Accordingly, saying that Brown applied the handcuffs in conformity with those standards and

25    policies does not establish, under summary judgment standards, that there was no excessive force.

26

27    [14]  Defendants spent some time in their brief and at oral argument defending the use of handcuffs.
However, plaintiff does not complain that Brown used the handcuffs, he complains that she put
them on such that they were too tight.

28

16

2. <u>Plaintiff's Evidence</u>

In any event, plaintiff does dispute Brown's testimony (if her testimony can be read to say that no excessive force was applied).  He testifies that she applied the handcuffs "too tight."  Plaintiff's Opposition Facts ¶ 6.  He "complained to Brown numerous times that the handcuffs were too tight and she ignored me."  <u>Id.</u> ¶ 7.[15]

3. <u>Resolution</u>

Defendants argue that plaintiff's "self-serving" statements are not enough to put this issue genuinely in dispute.  ECF No. 90 at 17-18.  In support, defendants cite <u>Villiarimo v. Aloha Island Air, Inc.</u>, which contains the following quote: "However, this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  281 F.3d 1054, 1061 (9th Cir. 2002) (quoting <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir.1996)).

The quoted language does not apply here.  While plaintiff's sworn statement is uncorroborated, it is not "self-serving" in the way the Ninth Circuit uses that term.  In <u>Villiarimo</u>, plaintiff claimed she was fired because of her sex.  She testified that male employees who committed the same error she did "were punished less severely than she was."  <u>Id.</u> at 1059.  The Ninth Circuit found that the district court was correct to find that this testimony did not create a genuine dispute because "Villiarimo cites only her own self-serving and uncorroborated affidavit and deposition testimony in support of this assertion, and provides no indication how she knows this to be true."  <u>Id.</u> at 1059 n.5.  The statement at issue was not based upon plaintiff's own personal knowledge, but was made only to support her claim.  That is what made it "self-serving."

Similarly, in <u>Kennedy</u>, plaintiff claimed that she was fired because of her disability, even though she was capable of doing her job despite the disability.  <u>Kennedy</u>, 90 F.3d 1477.  However, she had previously sworn, on state-disability forms, that she was completely disabled

---

[15]  Plaintiff asserts in his brief that he suffered "pain and numbness for over approximately three weeks subsequent to the police encounter."  ECF No. 102 at 2.  However, he does not include this assertion in any declaration, or otherwise support it with any evidence.

1    from all work.  Id. at 1480, 1481.  Also, she had submitted her doctor's disability note to her

2    employer, and it also stated that she was totally disabled from all work.  Id. at 1479-80.  Finally,

3    her doctor had testified that she was totally disabled from all work.  Id. at 1481.  For the ADA

4    claim, however, she testified that she was not totally disabled from all work.  Because of all this,

5    the Ninth Circuit concluded:

6               Her deposition testimony in this case in support of her ADA claim
               to the effect that she was *not* totally disabled is uncorroborated and
7               self-serving.  Moreover, this deposition testimony flatly contradicts
               both her prior sworn statements and the medical evidence.  As such,
8               we conclude her deposition testimony does not present a sufficient
               disagreement to require submission to a jury.
9

10   Kennedy, 90 F.3d at 1481 (emphasis in text, footnote omitted).

11          According to the cases defendants cite, a person's testimony is "self-serving" if it is a

12   conclusory statement outside of the person's own knowledge, or if it contradicts his own prior

13   admissions and sworn statements or the testimony of others that he has submitted and relied upon

14   in other contexts.  Here, plaintiff's testimony is not self-serving.  It is ordinary testimony about

15   facts as to which plaintiff is a percipient witness.  It is entirely within plaintiff's knowledge that

16   Brown applied the handcuffs too tightly, that plaintiff complained about it numerous times, and

17   that Brown ignored his complaints.  This testimony does not contradict any other evidence or

18   testimony plaintiff gave, nor does it contradict any other testimony that he has relied upon in

19   other contexts.[16]  Plaintiff's testimony, then, puts into genuine dispute the question of whether the

20   handcuffs were put on too tight.

21          Defendants next argue that it is undisputed that plaintiff failed to tell Brown that the

22   handcuffs were too tight and that the handcuffing did not result in "demonstrable injury including

23   bruises."  ECF No. 90 at 16-18.  There are two problems with this argument.  First, it is genuinely

24

25   [16]  In any event, if plaintiff's testimony is self-serving, then so is Brown's, at least as to whether
     the handcuffs were too tight.  It is only her testimony that establishes that she applied the
26   handcuffs in accordance with procedure and her training, and that she was properly trained in the
     application of handcuffs.  Further, the only corroboration of her testimony that plaintiff did not
27   complain, is that her partner did not hear any complaints either, but the partner's interests are
     entirely aligned with hers.
28

1   disputed whether plaintiff told Brown that the handcuffs were too tight.  Second, defendants

2   identify no authority for the proposition that an excessive force claim is valid only if the plaintiff

3   winds up with visible bruises.[17]

4         D.  Defendants' Motion: Qualified Immunity

5         Defendants argue that even if Brown's conduct was unconstitutional, it was not clearly

6   established that her conduct was unconstitutional, and therefore she is entitled to qualified

7   immunity.

8             1.  The search

9         At the time Brown searched plaintiff in April 2014, it was clearly established that a

10   warrantless search of plaintiff "is *per se* unreasonable under the Fourth Amendment," unless there

11   existed an exception to the warrant requirement.  Chambers, 399 U.S. at 51 ("[o]nly in exigent

12   circumstances will the judgment of the police as to probable cause serve as a sufficient

13   authorization for a search"); Ogden, 485 F.2d at 539 ("[a] search without the prior approval of a

14   judge or magistrate is *per se* unreasonable under the Fourth Amendment subject only to a few

15   well-delineated exceptions").

16         As noted, the only exception to the warrant requirement identified by defendants is the

17   Terry stop exception.  However, it was clearly established at the time of the search that a Terry

18   stop exception existed *only* where it was "'confined in scope' to a 'carefully limited search of the

19   outer clothing . . . in an attempt to discover weapons which might be used to assault' an officer."

20   I.E.V., 705 F.3d at 433.  Therefore, the undisputed facts of this encounter show that the search

21   Brown conducted was not a Terry search, but rather, as discussed above, was a full-on search for

22   contraband or evidence of a crime.  This is so even if we accept Brown's version of the facts.

23   ////

24

_____

25   [17]  In LaLonde v. Cty. of Riverside, 204 F.3d 947, 960 (9th Cir. 2000), there was no indication
     that any visible bruising resulted from the "too tight" handcuffs, yet the resulting excessive force
26   claim was remanded for consideration by a jury.  In any event, defendants' declarations do not
     state that plaintiff lacked bruises from the handcuffs, and plaintiff's declarations do not state that
27   he had bruises.  The issue is simply not addressed in the evidence presented to the court.

28

1          2.  <u>The arrest</u>

2          It was clearly established at the time of the April 2014 arrest at issue here that a police

3  officer could not conduct a warrantless arrest of a person unless she had probable cause to do so.

4  <u>Lopez</u>, 482 F.3d at 1072 ("[u]nder the Fourth Amendment, a warrantless arrest requires probable

5  cause").  Whether Brown reasonably believed that there was probable cause to arrest plaintiff is

6  genuinely in dispute.

7          Two of the four bases for Brown's assertion that there was probable cause to arrest

8  plaintiff are genuinely in dispute: whether plaintiff was "with" the group of men drinking and

9  rolling drugs, or was only in the same general area as that group; and whether plaintiff smelled of

10  marijuana.  On defendants' motion for summary judgment, the court must discount those bases,

11  since it must construe the facts in the light most favorable to plaintiff.

12          Defendants argue that even if Brown was mistaken about whether plaintiff was with the

13  group of suspicious men, she was still entitled to qualified immunity.  This argument fails.  First,

14  as noted above, nothing in Brown's declaration or her partner's, states that plaintiff was in any

15  way associated with the group of suspicious men, nor that Brown thought that he was.  Those

16  assertions appear only in defendants' brief, and in oral argument.  Second, "[n]ot all errors in

17  perception or judgment . . . are reasonable.  While we do not judge the reasonableness of an

18  officer's actions with the 20/20 vision of hindsight, nor does the Constitution forgive an officer's

19  every mistake.  Rather, we adopt the perspective of a reasonable officer on the scene . . . in light

20  of the facts and circumstances confronting [her]."  <u>Torres v. City of Madera</u>, 648 F.3d 1119,

21  1123-24 (9th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1032 (2012) (citations and internal quotation

22  marks omitted).  Even if defendants' declarations can be read to say that Brown believed plaintiff

23  was part of the group of suspicious men, whether or not this belief was reasonable is genuinely in

24  dispute.  Plaintiff states under oath that he was not with that group, and defendants give no

25  indication of why Brown would have believed that he was.

26          That leaves only the fact that plaintiff was present in the neighborhood, and that he was

27  found to have $772 in his pocket.  Defendants do not argue, nor identify any cases standing for

28  ////

1   the proposition, that these two bases, standing alone, are sufficient to show that Brown reasonably

2   believed that she had probable cause to arrest plaintiff.

3                    3.  Excessive force

4        It was clearly established in April 2014, when Brown handcuffed plaintiff, that "overly

5   tight handcuffing can constitute excessive force."  Wall, 364 F.3d at 1112; Meredith v. Erath, 342

6   F.3d 1057, 1063-64 (9th Cir. 2003) ("a reasonable agent in Erath's position would have known, in

7   July 1998, that to place and keep Bybee in handcuffs that were so tight that they caused her

8   unnecessary pain violated her Fourth Amendment right to be free from an unreasonable seizure").

9   Defendants seem to argue that this rule is not clearly established where plaintiff does not cry out

10  in pain or where the handcuffing does not result in "demonstrable injury including bruises."  ECF

11  No. 90 at 16-18.  However, as discussed above, it is genuinely in dispute whether plaintiff

12  notified Brown of the handcuffing problem, and defendants have identified no authority stating

13  that no violation occurs unless plaintiff has visible bruises.

14       Brown asserts that she followed all applicable policies and procedures for handcuffing

15  plaintiff.  Even if this is so, defendants have not identified any authority that grants her qualified

16  immunity even though she was aware that the handcuffing was too tight and was an application of

17  excessive force.  The court knows of no authority excusing blind reliance on policies and

18  procedures when the evidence right in front of the officer is that she was applying excessive

19  force.

20       E.  Defendants' Motion: Monell Liability

21       Defendants argue that plaintiff has not produced evidence of a Vallejo policy leading to

22  violations of plaintiff's rights.  Plaintiff submits a 2013 jury verdict against two Vallejo police

23  officers (not the City), finding that they used excessive force.  See ECF No. 95 at 6-11.  He also

24  submits a declaration from Frederic Marc Cooley recounting the use of excessive force against

25  him by Vallejo police officers, and the resolution of the case with a payment to him.  See ECF

26  No. 95 at 13-17.  In his verified complaint, plaintiff identifies 10 other lawsuits against Vallejo

27  police officers in which the officers are alleged to have used excessive force and/or illegally

28  searched and seized plaintiffs.  Complaint at 3-5.  Plaintiff offers no other evidence in support of

                                                    21

1    his claim that Vallejo has a policy, custom or practice of violating the rights of its African-

2    American citizens.

3           "Liability for improper custom may not be predicated on isolated or sporadic incidents; it

4    must be founded upon practices of sufficient duration, frequency and consistency that the conduct

5    has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th

6    Cir. 1996), cert. denied, 520 U.S. 1117 (1997).  Nonetheless, "a custom or practice can be

7    inferred from widespread practices or evidence of repeated constitutional violations for which the

8    errant municipal officers were not discharged or reprimanded." Hunter v. County of Sacramento,

9    652 F.3d 1225, 1233-34 (9th Cir. 2011) (internal quotation marks omitted).  "[E]vidence of

10   inaction – specifically, failure to investigate and discipline employees in the face of widespread

11   constitutional violations – can support an inference that an unconstitutional custom or practice has

12   been unofficially adopted by a municipality." Hunter, at 1234 n.8 (emphasis in original).

13          Here, plaintiff has not provided evidence of wide-spread and repeated constitutional

14   violations.  Instead, plaintiff relies on a list of lawsuits filed against the City of Vallejo and its

15   police officers.  However, the fact that other people have sued Vallejo police officers and/or the

16   City for Fourth Amendment violations – even if two of them resulted in a plaintiffs' verdict or a

17   settlement – is not evidence that the City has a policy or practice that led to the violation of

18   plaintiff's Fourth Amendment rights.  Accordingly, the court finds that there is no genuine

19   dispute as to any material fact with respect to this claim.  Defendant City of Vallejo's motion for

20   summary judgment should therefore be granted.

21                                    V.  CONCLUSION

22          For the reasons stated above, IT IS HEREBY RECOMMENDED that:

23          1.  Defendants' motion for summary judgment (ECF No. 90) be GRANTED as to the

24   Monell claim and otherwise DENIED.  Accordingly, the City of Vallejo should be dismissed

25   from this lawsuit.

26          2.  Plaintiff's cross-motion for partial summary judgment (ECF No. 91) should be

27   DENIED.

28          3.  This case should be returned to the calendar for a final pre-trial conference, and trial.

1    These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty one days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

5    document should be captioned "Objections to Magistrate Judge's Findings and

6    Recommendations."  Any response to the objections shall be filed with the court and served on all

7    parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file0

8    objections within the specified time may waive the right to appeal the District Court's order.

9    Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

10   (9th Cir. 1991).

11   DATED: June 29, 2016

12   _____

13   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28